IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 7, 2001 Session

# ROBERT ALLEN FAHEY  v.  FABIEN ELDRIDGE & ELDRIDGE AUTO SALES, INC.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Wilson County**
**No. 10389      Hon. Clara Byrd, Judge**

---

**No. M1999-00500-SC-R11-CV - Filed March 22, 2001**

---

The primary issue presented in this case is whether the Court of Appeals erred in finding that the defendants waived all issues on appeal by failing to specifically state these issues in their motions for a new trial as required by Tennessee Rule of Appellate Procedure 3(e). The defendants were found liable by a jury for the assault and battery of the plaintiff, and they were ordered to pay compensatory and punitive damages in the amount of $1.75 million. The defendants filed motions for a new trial, which were denied by the trial court, in part, because the alleged errors were not specifically enumerated. On appeal, the Court of Appeals found that the alleged errors were not stated with sufficient specificity in the motions so as to preserve them for appeal, and it dismissed all issues before it. The defendants then requested permission to appeal to this Court. We hold that the defendants' motions for a new trial did set forth several issues for review in compliance with Rule 3(e), and we remand this case to the Court of Appeals for a determination of these issues on their merits.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the**
**Court of Appeals Reversed; Case Remanded to the Court of Appeals**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Chantal M. Eldridge, Cookville, Tennessee, and Rick Halprin, Chicago, Illinois, for the appellant, Fabien Eldridge.

Samuel J. Harris, Cookville, Tennessee, for the appellant, Eldridge Auto Sales, Inc.

William E. Farmer, Lebanon, Tennessee, for the appellee, Robert Allen Fahey.

## OPINION

## BACKGROUND

This case arises out of a fight that occurred on November 10, 1992, between the defendant, Fabien Eldridge, and the plaintiff, Robert Fahey. On that night, the defendant went to the plaintiff's apartment, and when the plaintiff answered the door, the defendant attacked him. The plaintiff filed suit in the Putnam County Circuit Court against Eldridge and against his employer, Eldridge Auto Sales, Inc., under the doctrine of respondeat superior.[1] The case was later transferred to the Wilson County Circuit Court, where, on October 9, 1998, a jury found both defendants jointly and severally liable for the torts of assault and battery. The jury awarded the plaintiff compensatory and punitive damages totaling $1.75 million.[2]

At 11:02 p.m. on the last day permitted for filing, counsel for both defendants filed motions seeking a new trial. The motion of defendant Eldridge was inartfully drafted, and it was written in prose as if it were a brief. The motion did not contain any enumerated assignments of error, and in some instances, it did not specifically set forth any legal grounds upon which a new trial was sought. Similarly, the motion of defendant Eldridge Auto Sales alleged no specific grounds for relief, but merely incorporated by reference the motion filed by defendant Eldridge.[3]

At a hearing on the motions on November 24, 1998, the trial judge expressed her concern that she was unable to determine the precise issues upon which she was being requested to rule. In relevant part, she stated, "My problem is that with the Motion for New Trial, I don't have it broken down into issues where I can rule, do I?" After defendants' counsel suggested that she could submit a supplemental brief with numbered issues, the court stated, "I certainly want to, you know, to rule and give you an opportunity to be heard on these issues, but I guess I'm a little confused as to how to rule on these issues." After hearing further argument on the motion, the trial court stated that

> on the Motion for New Trial, it is going to be my holding that I am going to deny the
> Motion for New Trial and I am going to hold that it is not properly presented to the
> Court. Certainly, it does not have the assignment of errors that is required for a judge
> to be able to rule.[4]

---

[1] The defendant was also an owner and shareholder of Eldridge Auto Sales.

[2] In a separate criminal action, the defendant was convicted of attempted second degree murder, sentenced to nine and one-half years in the Department of Correction, and fined $25,000. The appellant's conviction was later reversed by the Court of Criminal Appeals for prosecutorial misconduct—the special prosecutor represented the victim in the civil case arising from the same incident—and the case was remanded for a new trial. See State v. Eldridge, 951 S.W.2d 775 (Tenn. Crim. App. 1997). No permission to appeal was sought from this court in that criminal action.

[3] The trial court found that this incorporation by reference to another motion was acceptable, and as the issue is not before us, we reach no determination as to whether this method by defendant Eldridge Auto Sales properly preserved errors for appeal.

[4] Despite these concerns, the trial court's Order denying the defendants' motions for a new trial appears to suggest that the issues presented in the motions were considered on their merits: "Upon considering the entire record and the Defendants' Motions for New Trial, and after hearing arguments of counsel, the Court denied the Defendants' Motions for New Trial."

The defendants then appealed to the Court of Appeals, where defendant Eldridge raised three broad issues concerning admission or exclusion of certain testimony. Defendant Eldridge Auto Sales raised five issues including whether the evidence was insufficient as a matter of law to establish vicarious liability and whether the court improperly instructed the jury on punitive damages. The Court of Appeals dismissed the appeal, holding simply that "the issues have been waived since they were not specifically stated in the motion for new trial." The intermediate court characterized the motions for a new trial as "a factual history of the case, argumentative in nature, with no grounds for a new trial specified."

The defendants then requested permission to appeal to this Court. We conclude that the defendants did state several issues in their motions for a new trial with enough specificity to preserve those issues for appeal. Accordingly, we remand these issues as set forth below to the Court of Appeals for consideration on their merits. All other issues remaining before this Court from the grant of permission to appeal are pretermitted.

## SPECIFICITY REQUIREMENTS OF
## RULE OF APPELLATE PROCEDURE 3(e)

It has long been the rule in this state that in order to preserve errors for appeal, the appellant must first bring the alleged errors to the attention of the trial court in a motion for a new trial. See Memphis St. Ry. Co. v. Johnson, 114 Tenn. 632, 88 S.W. 169 (1905). This requirement was initially imposed by this Court to make more efficient the process of reviewing "the ever increasing number of appeals," and we have recognized that this practice significantly aids the functions of the appellate courts by limiting and defining the issues for review. See Board of Equalization v. Nashville, C. & St. L. Ry., 148 Tenn. 676, 680, 257 S.W. 91, 93 (1923) (noting that this Court "was constrained to exercise its power of prescribing rules of practice, requiring that errors be first assigned in a motion for new trial presented to the trial court, and . . . limiting the inquiry on appeal to error assigned in the motion"). Moreover, and perhaps most importantly, motions for a new trial also help to ensure that

> the trial judge might be given an opportunity to consider or to reconsider alleged errors committed during the course of the trial or other matters affecting the jury or the verdict, such as alleged misconduct of jurors, parties, or counsel which either occurred after the trial or could not reasonably have been discovered until after the verdict.

McCormic v. Smith, 659 S.W.2d 804, 806 (Tenn. 1983). In modern appellate practice, the requirement of filing a motion for a new trial to preserve most errors is governed by Rule of Appellate Procedure 3(e), which reads in relevant part,

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Although Rule 3(e) requires that the grounds for the motion be "specifically stated," the Rule is silent as to how specific these grounds must be. Decisions from this Court have long stated the standard for specificity as being "as specific and certain as the nature of the error complained of will permit." Johnson, 114 Tenn. at 643, 88 S.W. at 170; see also McCormic, 659 S.W.2d at 805 (acknowledging that Johnson has survived the enactment of the Rules). While this standard says little more than does Rule 3(e) itself, several principles may be determined from the Rules and case law as to the degree of specificity needed in a motion for new trial to properly preserve issues for appeal.[5]

First, the motion should contain a concise factual statement of the error, "sufficient to direct the attention of the court and the prevailing party to it." Johnson, 114 Tenn. at 644, 88 S.W. at 170-71. Under this standard, it is clearly improper to simply allege, in general terms, that the trial court committed error, either by taking some action or by admitting or excluding evidence;[6] rather, the motion should identify the specific circumstances giving rise to the alleged error so that it may be reasonably identified in the context of the entire trial. See State v. Ashburn, 914 S.W.2d 108, 114 (Tenn. Crim. App. 1995). Accordingly, a well-drafted motion alleging improper admission or exclusion of testimony, for example, should identify the witness giving the testimony and provide a short and plain summary of the testimony improperly admitted or excluded. Moreover, a well-drafted motion alleging error in the jury instructions should set forth the language of the instruction given by the court and the language of the instruction rejected by the court if an alternative instruction was requested.

Second, as it is well-settled in law that a general objection is usually not sufficient to assign error, Tenn. R. Evid. 103(a)(1); Jack M. Bass & Co. v. Parker, 208 Tenn. 38, 48, 343 S.W.2d 879, 883 (1961), the motion should also contain a specific legal ground alleged for the error. Accordingly, in addition to setting forth a concise statement of the factual grounds, a well-drafted motion for a new trial should also identify, with reasonable clarity, the legal ground upon which the trial court based its actions and contain a concise statement asserting the legal reasons why the court's decision was improper. However, because motions for a new trial should not be expanded "into all the voluminosity of 'briefs' and printed arguments," National Hosiery & Yarn Co. v. Napper, 124 Tenn. 155, 171, 135 S.W. 780, 784 (1911), the movant is not required to identify such errors in the motion with the same precision expected in the appellate courts. Therefore, precise citation to a rule, statute, or case as the legal ground for the alleged error is normally not required to preserve the issue for

---

[5] Decisions rendered before the effective date of the Rules of Appellate Procedure may in many cases be helpful to understanding the Rules themselves. The advisory commission comments indicate that the Rules "reflect a study of existing Tennessee law as well as the rules and statutes of virtually every other state." Tenn. R. App. P. 1 advisory commission comments. Therefore, to the extent that prior decisions from this Court concerning appellate practice are consistent with the Rules, they are certainly persuasive authority.

[6] See, e.g., Cloyd v. State, 202 Tenn. 694, 696, 308 S.W.2d 467, 468 (1957) ("[C]ertain evidence was improperly submitted to the jury."); Loeffler v. Kjellgren, 884 S.W.2d 463, 472 (Tenn. Ct. App. 1994) ("The trial court erred in jury instructions in the second trial."); State v. Gauldin, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987) ("The instructions given by the court to the jury were unclear and confusing.").

appeal under Rule 3(e), although to the extent that citation to authority aids in fairly bringing the legal nature of the error to the attention of the trial judge, such a practice ought to be encouraged.[7]

Finally, Rule of Appellate Procedure 1 provides that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits." Accordingly, when an appellate court reviews a motion for a new trial under Rule 3(e), it should view the motion in the light most favorable to the appellant, and it should resolve any doubt as to whether the issue and its grounds were specifically stated in favor of preserving the issue. Any other method of review would result in needlessly favoring "technicality in form" over substance, a practice specifically discouraged by the comments to Rule 1. Thus, while courts cannot find error where none has actually been alleged, no matter how liberal a construction is given to the motion, Jacks v. Williams-Robinson Lumber Co., 125 Tenn. 123, 128-29, 140 S.W. 1066, 1067 (1911) ("But this court will not search the record at large to find errors. The presumption is that the judgment of the lower court is correct. The burden is upon the appellant to specifically point out the errors complained of, and affirmatively show that they exist."), courts may not deem a motion for a new trial insufficient to preserve errors for appeal merely because it fails to enumerate specific issues. Accordingly, just as parties must endeavor to specifically state the issues raised so as to avoid any potential for future waiver, appellate courts should not lightly dismiss an issue on appeal under a strict or technical application of Rule 3(e).

Having reviewed the appellant's motion for new trial with these general principles in mind, we find that the Court of Appeals erred in dismissing the appeal pursuant to Rule of Appellate Procedure 3(e). As the intermediate court noted, it is true that the defendants' motions were not models to be followed when seeking to bring alleged errors to the attention of a trial court or to preserve those alleged errors for appeal. However, from our examination of the defendants' motions, we have been able to identify, with diligent and patient effort, at least twelve alleged errors that were stated with sufficient specificity so as to be preserved for appellate review. These issues are as follows:

1. Whether the trial court erred in excluding evidence of the plaintiff's prior threats or of his subsequent statements to others to impeach the plaintiff's testimony that he was a peaceful person.[8]

_____

[7] This is not to say that the trial court cannot require precise citation to authority in considering a motion for a new trial. It is only to say that such precision is not otherwise required to preserve the error for appeal under Rule 3(e), so long as the legal ground for the alleged error is clearly and fairly presented to the trial court.

[8] To provide one example of the application of the Rule 3(e) standards for specificity, we note the language of the defendants' assignment of error on this issue:

Although Mr. Fahey purports to have a peaceful character and denies having ever been in a fight with anyone prior to November 10, 1992, he had, in fact, initiated a fight with David Nash in November, 1991, in a similar fashion to his attack on Defendant Eldridge, and again, the fight was over Defendant Eldridge's sister. In addition, after November 10, 1992, Mr. Fahey was interviewed by Geoffrey Davidian, a journalist who was writing a story on the fight and the [Defendant] Eldridge's sister, and following the interview, Mr. Fahey evidently had a change of heart and telephoned Mr. Davidian and threatened him if he published any information he had provided during the interview. Similarly, Mr.

(continued...)

2.      Whether the trial court erred in excluding evidence of the plaintiff's subsequent acts to impeach the plaintiff's testimony that he has psychological injuries resulting from the fight with, and from his fear of, Defendant Eldridge.

3.      Whether the trial court erred in admitting the plaintiff's testimony concerning the existence of a lock-blade knife when no other evidence could establish the existence of such a knife.

4.      Whether the trial court erred in admitting testimony that Linda Eldridge dropped a butcher knife from under her arm during the evening of the assault when no other allegations were made that Defendant Eldridge entered Mr. Fahey's apartment with a kitchen knife or ever possessed a kitchen knife during the fight.[9]

5.      Whether the trial court erred in admitting evidence of Defendant Eldridge's prior conviction for possession of drugs because its probative value was outweighed by the danger of unfair prejudice.

---

[8] (...continued)
Fahey had made threats against Defendant Eldridge and his sister prior to the fight and his sister's homicide which had been communicated to Defendant Eldridge's sister. The Court disallowed any testimony of previous threats or subsequent acts and limited the defendants' proof to the events of November 10, 1992.

Although not artfully drafted to ensure clarity, we have been able to determine, with some patience, that the issue here alleged is whether the trial court erred in excluding testimony concerning the plaintiff's threats and actions toward others. The motion sets forth a sufficient factual basis by identifying the testimony excluded as that of David Nash and Geoffrey Davidian, and by concisely identifying the substance of that testimony. Moreover, the legal basis for the assignment of error is that this testimony was properly admissible to impeach the plaintiff's statements that he was a peaceful person. While this legal basis is not stated as precisely as we could desire, Rule 3(e) looks to the substance and not to the technical form or wording of the motion.

[9] To provide another example of the application of the Rule's specificity standards, the defendants' motion on this issue sets forth this assignment of error as follows:
Similarly, Mr. Fahey was permitted to call David McClellen to testify at trial, although he had only listed him as a witness for the first time on August 24, 1998. Mr. McClellen was permitted to testify that on November 10, 1992, Defendant Eldridge, Linda Eldridge and Mr. Chambers' entered Bud's Tavern where he bartended, they were looking for Mr. Fahey, and Linda Eldridge dropped a butcher knife from under her arm. There has never been an allegation since November 10, 1992 through the present that Defendant Eldridge entered Mr. Fahey's apartment with a kitchen knife or ever possessed a kitchen knife during the fight. Nonetheless, Mr. McClellen was permitted to testify, and the Jury was permitted to consider his testimony.

Once again, the motion was inartfully drafted, and the issue presented is whether the trial court improperly allowed evidence that Linda Eldridge dropped a butcher knife from under her arm. The motion sets forth an adequate factual basis by identifying the evidence contested, *i.e.*, the testimony of David McClellen, and it sets forth the substance of that testimony. Although less clear, the motion also sets forth an adequate legal basis for the motion as one of irrelevance to any issue at trial. While this interpretation of the motion's assertion of legal grounds is exceedingly generous, the interpretation is within the meaning of Rule 3(e).

6.	Whether the trial court erred in permitting evidence that Defendant Eldridge was on parole at the time of the fight because its probative value was outweighed by the danger of unfair prejudice.

7.	Whether a federal probation officer was "unavailable" for purposes of this trial, and if so, whether the trial court erred in not allowing the previously sworn testimony of this officer to be read into the record.

8.	Whether the trial court erred in permitting the plaintiff to read to the jury the deposition of Dr. Gaw, who testified that the plaintiff's seizure could be related to head trauma sustained in fight, when no other evidence established that the plaintiff suffered head trauma as a result of the assault.

9.	Whether the trial court erred in allowing the plaintiff to testify as to his belief concerning the motivation for the attack when the plaintiff's earlier sworn statements contradicted his reasons given at trial for the fight.

10.	Whether the evidence was insufficient as a matter of law to submit to the jury the issue of Defendant Eldridge Auto Sales' vicarious liability.

11.	Whether the trial court erred in submitting evidence of the defendants' current financial condition for purposes of calculating the punitive damages award.

12.	Whether the trial court erred in failing to grant a continuance so that defendant Eldridge's principal attorney could be present for all of the testimony.

In all of these issues, we conclude that the defendants have minimally, but adequately, alleged facts identifying the specific error alleged to have been committed by the trial court. In addition, the legal grounds were generally stated with sufficient specificity so as to draw our attention to the alleged basis for the error, although in most cases the defendants did not provide precise citation to authority in stating the legal grounds for the alleged errors. Nevertheless, because the defendants have stated adequate factual and legal grounds for the alleged errors, Rule 3(e) can require nothing more to preserve these issues for appeal.

Having found that the defendants sufficiently alleged twelve issues for review in their motions for a new trial, it may be helpful to illustrate why other issues were not sufficiently preserved as error for appeal. As a typical example of this failure to meet the minimum requirements of Rule 3(e), the defendants tried to allege one error as follows:

During his deposition and at trial, Mr. Fahey testified that Defendant Eldridge pushed him seven feet in the air where he flipped and landed with his head closest to the door. Although Defendant Eldridge notified Mr. Fahey's attorneys that he intended to introduce expert testimony to rebut Mr. [Fahey]'s testimony concerning the dynamics of the fight, Defendant Eldridge's original expert witness became

unavailable to testify. Although Defendant Eldridge attempted to substitute Robert S. Thrasher, an expert on the same subject matter and for the same purpose, the Court disallowed his substitution, and the defendants were prevented from presenting evidence that Mr. Fahey's testimony concerning the dynamics of the fight were physically impossible.

The issue presented by this paragraph is presumably whether the trial court erred in not permitting the defendants to present a second expert witness after their first became unavailable to testify. The motion sets forth an adequate factual basis for the error by identifying the expert as Robert S. Thrasher, and by concisely stating what his testimony was to have been. However, the motion does not assert the legal grounds relied upon by the court for excluding the expert, and it does not set forth any legal ground identifying why the court's exclusion was improper. Instead, the motion provides only a general statement that "the Court disallowed his substitution, and the defendants were prevented from presenting evidence that Mr. Fahey's testimony concerning the dynamics of the fight were physically impossible." As we stated earlier, the court will not find an error, even under a liberal interpretation of the motion, where no error has actually been alleged, and we conclude that this issue, and others like it, were not properly preserved for appeal under Rule 3(e).

## CONCLUSION

In summary, we hold that the defendants' motions for a new trial stated twelve issues with sufficient specificity under Rule of Appellate Procedure 3(e) so as to preserve these issues for appeal. Before an issue can be properly preserved in a motion for a new trial under Rule 3(e), a well-pleaded motion should (1) allege a sufficient factual basis for the error by setting forth the specific circumstances giving rise to the alleged error; and (2) allege a sufficient legal basis for the error by identifying the trial court's claimed legal basis for its actions and some articulation of why the court erred in taking such actions. Moreover, appellate courts should review a motion for a new trial in the light most likely to preserve the issue alleged, although courts cannot create an error where none has been legitimately preserved.

The issues identified by this Court as properly preserved under Rule of Appellate Procedure 3(e) are remanded to the Court of Appeals for consideration on their merits. As it appears from the record that the trial court may not have considered these issues on their merits either, the intermediate court may, in its discretion, first remand this case to the Wilson County Circuit Court for a hearing on these issues. All other issues pending before this Court from our grant of permission to appeal are pretermitted.

Costs of this appeal are assessed to the plaintiff/appellee, Robert Allen Fahey.

_____

-8-

WILLIAM M. BARKER, JUSTICE